Filed 1/7/21  Samuel Z. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMUEL Z.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Real Party in Interest. | F081951<br><br>(Super. Ct. No. JVDP-18-000226)<br><br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Gloria F. Rhynes, Judge.  (Retired Judge of the Alameda Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Mussman & Mussman, William E. Mussman III, and Tracy M. De Soto for Petitioner.

No appearance for Respondent.

---

[*]    Before Poochigian, Acting P.J., Meehan, J. and Snauffer, J.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

Samuel Z. (father) seeks extraordinary writ relief from the juvenile court's orders issued at an 18-month review hearing (Welf. & Inst. Code, § 366.22, subd. (a)(1))[1] terminating reunification services and setting a February 22, 2021 section 366.26 hearing as to his now eight-year-old daughter, A.Z. Father contends the juvenile court's reasonable services and detrimental return findings were error and require remand for either continued services or the return of his daughter to his custody. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Six-year-old A.Z. (the daughter) was removed along with her four siblings from her mother's custody in December 2018 because her mother was using methamphetamine and medically neglecting several of the children. The seven month old smelled of spoiled milk and urine and the nasogastric tube used to feed her was encrusted with mucous. The five- and one-year-old children had congenital hypothyroidism and had been without their medication for a month. The social worker who removed the children noted the family home was tidy but smelled of urine. The children had visible nits in their hair and the seven month old had long dirty fingernails and a severe rash under her arm and on her diaper area. The children were placed in separate foster homes in Merced and Stanislaus Counties.

The Stanislaus County Community Services Agency (agency) filed a dependency petition on the children's behalf, identifying father as the daughter's presumed father and two other men as the presumed fathers of the remaining four children. Father contacted

---

[1]     Statutory references are to the Welfare and Institutions Code.

the agency in January 2019, stating he wanted to participate in the proceedings and be appointed an attorney.

Father was living in Idaho and had a 15-year-old daughter who lived with her mother in Modesto. He had a positive relationship with his older daughter and spoke with her often. He previously struggled with depression and anxiety but was not under psychiatric treatment. He had a history of methamphetamine and marijuana use but had not used for five or six years. He denied alcohol dependency, stating he drank alcohol occasionally for social events.

The agency recommended against placing the daughter with father because she had not seen him in two years, and they did not have ongoing contact. Also, he did not have secure housing. He lived with his brother and sister-in-law, but their lease expired in April 2020. Father was on a waiting list for Idaho public housing and hoped to get a place in October 2020. The agency was concerned that father was not committed to taking custody of the daughter. When asked, he said his sister would take custody.

The juvenile court adjudged the children dependents in March 2019 and ordered reunification services for father, the children's mother and the father of the three youngest children.[2] The oldest child apparently was released to his father's custody. The court also ordered the agency to initiate an Interstate Compact on the Placement of Children with Idaho. Father's services plan required him to participate in individual counseling, complete a parenting program and substance abuse assessment and submit to random drug testing.

By the six-month review of services, father was participating in individual counseling in Idaho. His clinician met with him twice in August 2019 and discussed his court-ordered case plan with him. He worked very hard in his sessions and made progress by getting a job, working on relationship stability and making wise choices

---

[2]     The juvenile court provided the father of the youngest three children reunification services until the 18-month review hearing.

3.

about the friends he kept. Father was also enrolled and actively participating in a parenting class. He completed a substance abuse assessment but did not require treatment. In April 2019, he submitted to a hair follicle drug test and the results were negative. He and the daughter visited by telephone call and Skype at least twice a week. He visited her in person at the agency on July 18, 2019.

In October 2019, the juvenile court terminated reunification services for the children's mother but continued services for father. The court ordered father's case plan be amended to allow him overnight visits leading to a trial visit at the social worker's discretion.

In December 2019, the agency filed an application for psychotropic medication for the daughter, who was struggling to focus in school. She was diagnosed with attention deficit hyperactivity disorder (ADHD) and her psychiatrist opined she was in danger of needing a higher level of care than foster care if medication was not started immediately. She was also at risk of being held back in school because of her symptoms. The juvenile court granted the application.

Father continued to make good progress in his services plan and was cooperative with the agency. He attended individual counseling, completed a parenting class and drug tested at the agency's request. The test results were negative. He visited the daughter daily by telephone and Skype. He wanted to reunify with her and was willing to do whatever was asked of him. However, the agency believed it was premature to return the daughter to his custody and recommended the juvenile court continue services for father at the 12-month review hearing. The mother's whereabouts were unknown and remained so throughout the proceedings.

On February 28, 2020, the juvenile court continued father's services to the 18-month review hearing set for May 22, 2020.

By May 2020, father had moved out of the apartment he shared with his brother and sister-in-law and was living with a friend. Because his housing situation was a

barrier to starting a trial visit for him, the agency recommended the juvenile court continue the 18-month review hearing for 90 days to allow him to secure housing. The court granted the continuance and set the hearing for August 20, 2020.

Although father completed most of his case plan requirements, he was unable to secure housing by the continued hearing. The daughter meanwhile had been in foster care for two years and was considered a high needs child because she required an individualized education program and had ADHD. She required the additional support of her care provider for distance learning and the agency did not know if father would be able to provide her that level of care. The daughter was also very connected to and content with her foster family. She told her social worker and father that she wanted to remain in their home. Consequently, the agency recommended the juvenile court terminate reunification efforts and set a section 366.26 hearing to implement a permanent plan of adoption with the caregivers.

At a contested 18-month review hearing in October 2020, father testified he had been unemployed for about a year. He had just moved into Section 8 housing, which he applied for three years before. His apartment had two bedrooms and two bathrooms. He had a place for his daughter and could take custody of her immediately. He could also afford to support her. He knew she had been diagnosed with ADHD and that she had a learning disability. He believed he could manage her conditions because his oldest daughter had ADHD and he took care of her for a time. He also cared for his ex-fiancée's children, a five year old and a one year old, who had special needs. One had Asperger's syndrome, posttraumatic stress disorder (PTSD) and ADHD. The other had ADHD. He took care of them for a period of three years, five years before these proceedings.

Father visited the daughter twice in person within the previous five years. He lived with her the first year of her life before he left California to move to Idaho. Afterward, he did not speak to her and didn't know much about her. He was "pretty

much a stranger to her." More recently, however, he spoke to her every day on the telephone and was getting to know her. He believed she wanted a trial visit with him, which made him very happy, "beyond words." However, she also told him she wanted to be adopted by her caregivers. She said she was happy there.

Father's attorney argued the only impediment to reunifying father with his daughter was his poverty and lack of housing, which the agency did not assist him in obtaining. It would be inappropriate, he argued, to terminate reunification services under those circumstances.

The juvenile court found it would be detrimental to the daughter to place her with father because he had not been in her life for most of her childhood and they did not have a substantial relationship. In addition, she had high needs. The court found father was provided reasonable reunification services and ordered them terminated. The court ordered twice monthly visitation. The court also terminated reunification services for the father of the younger three children.

## DISCUSSION

There is a statutory presumption at each review hearing that the child will be returned to parental custody. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) That is unless the juvenile court finds by a preponderance of the evidence that doing so would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a)(1).) If the court finds it would be detrimental to return the child, it has the option of continuing reunification services up to the 18-month review hearing. At that point, the court must either return the child to parental custody or set a hearing under section 366.26 to select a permanent plan. (§ 366.22, subd. (a)(3).)

There are exceptional circumstances, however, under which the juvenile court may continue reunification efforts beyond 18 months. (§ 366.22, subd. (b).) None of them, however, apply in this case. Rather, they apply to a parent who is a resident of a

6.

court-ordered substance abuse treatment program; or recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security; or a minor or nonminor dependent at the time of the initial hearing. The court must also find the parent is making significant and consistent progress, there is a substantial probability the child will be returned to parental custody, and it is in the child's best interest to continue reunification efforts. Under those circumstances, the court may continue services up to 24 months from the date the child was initially removed from parental custody. (§ 366.22, subd. (b).)

Another possible exception that would allow the juvenile court to continue reunification services beyond the 18-month review hearing is when the court finds the parent was never provided reasonable reunification services. (*In re M.F.* (2019) 32 Cal.App.5th 1, 21.)

Father contends the juvenile court's detriment finding was based on the faulty assumption that the lack of in-person contact signified he and the daughter did not have a substantial relationship. Other evidence, he claims, points to a contrary finding, specifically evidence he visited with her every day for two years, completed his case plan and had the support of his church and family who lived nearby. Father also argues the court erred in finding he was provided reasonable reunification services when the agency did not facilitate in-person visitation.

We review the juvenile court's findings and orders for substantial evidence. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378–1379.) In so doing, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688–689.) We conclude substantial evidence supports the

juvenile court's decisions not to return the daughter to father's custody and to terminate his reunification services.

"The purpose of the dependency statutes is to provide for the protection and safety of a minor who comes under the jurisdiction of the juvenile court and, when consistent with the minor's welfare, to preserve the minor's family ties. [Citation.] 'Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect.' [Citation.] [¶] California's dependency statutes fulfill this duty by authorizing juvenile court intervention to protect children who are at a substantial risk of suffering physical or emotional harm. While the statutory scheme is designed to assist families to 'correct the problems which caused the child to be made a dependent child of the court,' [citation] its focus remains on the well-being of the child." (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 900.)

Here, father immediately asked to be involved in the dependency proceedings with a goal of reunifying with his daughter. He was fully cooperative with the agency and completed his court-ordered services. He also clearly loves his daughter and took advantage of telephone contact to develop a relationship with her. However, because of his housing situation, he was not able to advance to a trial visit. By the 18-month review hearing, the daughter was well settled into her foster care placement and wanted to be adopted.

Father's compliance and efforts are all proper considerations, which the juvenile court weighed in making its decision not to return the daughter. However, they are not determinative to its decision. Rather, its decision whether to return the daughter to father's custody must be dictated "by the well-being of the child at the time of the review hearing; if returning the child will create a substantial risk of detriment to his or her

8.

physical or emotional well-being, placement must continue .…'" (*In re Joseph B.*, *supra*, 42 Cal.App.4th at p. 900.)

Father was by his own admission a virtual stranger to his daughter before these proceedings were initiated. She was one year old when he left the state and he had not had contact with her for two years before these proceedings were initiated. In the two years she was under the care and control of the agency, he had two in-person visits. To remove her from a foster family where she was thriving to place her with a father she barely knew would cause an upheaval in her life and be detrimental to her emotional health. For that reason, substantial evidence supports the juvenile court's finding that returning her to father's custody would be detrimental to her emotional well-being.

Substantial evidence also supports the juvenile court's finding father was provided reasonable visitation. "Visitation is a critical component, probably the most critical component, of a reunification plan." (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1113–1114.) "Without visitation of some sort, it is virtually impossible for a parent to achieve reunification." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491–1492.) To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A).) Visitation requirements exist "[i]n order to maintain ties between the parent … and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent .…" (*Id*., subd. (a).)

Father's visitation order allowed for once weekly contact with the daughter by telephone, including Skype calls. If he went to California, he could have once weekly in-person visits. His visitation order was modified in October 2019 to allow the social worker discretion to begin community and overnight visits leading to a trial visit. However, a trial visit could not be arranged because father was renting a room from a friend and could not have his daughter visit with him there. Nor were there any relatives either in California or Idaho willing to provide father a place to visit his daughter.

9.

Meanwhile, he visited her at least twice a week by telephone and once in person at the agency in July 2019. At no time did he complain about the lack of in-person visits or seek assistance from the agency to arrange an in-person or overnight visit. Nor does father suggest how the agency was to facilitate in-person visits under the circumstances.

Given the important interests at stake, a parent must bear some responsibility in bringing obstacles to the juvenile court's attention. A parent may not "wait silently by until the final reunification review hearing to seek an extended reunification period based on a perceived inadequacy in the reunification services occurring long before that hearing." (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1093.) If father needed assistance with arranging in-person visitation, he and his attorney had ample time and opportunity during the 18-month reunification period to request it. Having failed to do so, he cannot now argue the agency's efforts to advance visitation were inadequate.

We find no error on this record.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

10.